Good morning, and may it please the Court, Daniel Habib, Federal Defenders of New York, on behalf of Jose Mujet. The District Court committed legal error by sua sponte invoking the concurrent sentence doctrine to decline review of Mujet's constitutional challenges to his Section 924C firearms convictions. As this Court's intervening decision in Pena made clear, if the District Court had vacated even one of the challenged firearms counts, it would have had discretion to decide whether to re-sentence Mujet de novo on all counts, including those carrying life terms that were imposed under the mandatory guidelines. Well, to cut to the chase, hasn't the District Judge simply said that she would not change the outcome? I don't think... In any event, in which case, in which case the concurrent sentence doctrine would seem to be controlled? So I don't think that's so for a few reasons, Judge Jacobs. First, I do want to, for purposes of preservation, adhere to my point that the concurrent sentence doctrine cannot apply in the circumstance whereas here a defendant, Section 2255 movement, challenges a conviction carrying a consecutive term. So I understand that this Court has held to the contrary and aloha wale, but I do want to make that point. But turning to the text of the District Court's opinion, I don't think it will bear that reading. The simplest reason is that Judge Preska listed the factors she was considering in invoking the factors listed in Vargas, this Court's 1980 decision in Vargas. I conclude that leaving these convictions unreviewed would not prejudice Mouyet. Those factors were the possibility of parole, the possibility of a recidivist enhancement in the future, the possibility of impeachment, the possibility of a pardon, and social stigma. So it's our submission that the best evidence of what the judge actually considered is what she said she considered. I would also point out that Judge Preska relied... She said that Mouyet would remain in custody regardless. Isn't that an indication that she wasn't going to re-sentence to anything less than her life sentence? I think that's equally susceptible to the interpretation that she viewed the counts as independent, as the government had urged. The government had said, and she described this Court's decision in Kassir in the same way, that regardless of what I do with respect to the 924c counts, I cannot do anything about the unchallenged Vicar murder counts. We know in light of the intervening decision in Peña that that was error. I think it's all... I do want to say two more things about that. One, if Judge Preska had done what the government says she did, this was an awfully oblique way of doing it. If Judge Preska had meant to say, there is no chance, applying the Section 3553a factors, that I would revisit your overall term of imprisonment, it would have been the simplest thing in the world for the judge to have said so. One might have expected a reference to, for example, the severity of the offense conduct. Perhaps one might have expected analysis of the mitigating evidence that Mr. Mouyet tendered. But we would have expected some textual evidence that this is what the Court was doing. Second, I do want to point out that Judge Preska relied exclusively on this opinion to deny 2255 motions brought by three of Mr. Mouyet's co-defendants. And so you have to believe, to accept the government's principle submission, you have to believe that she so ruled not only with respect to Mr. Mouyet, who did present some mitigating evidence, but also with respect to three other co-defendants who did not in their papers. And I have the applicable standard, which assigns the government the burden of showing that there's no possible risk of prejudice from application of the concurrent sentence doctrine. So to the extent that there's any ambiguity in the District Court's opinion, the proper course is remand. And if Judge Preska in fact did what the government says, or in fact would go on to do what the government says, it would be the simplest thing in the world for her to issue an order so ruling. I do also want to say that the possibility of resentencing in this case would be far from academic. Mr. Mouyet was sentenced to life terms under the mandatory guidelines, but those terms were not mandated by statute. He's been incarcerated for almost 30 years. He has incurred zero disciplinary infractions in the last 20 years. He obtained a GED. He has designed and taught courses to other inmates. He has self-published a book. In addition, he presented, in connection with his 2255 motion, substantial mitigating evidence relating to his upbringing, the trauma that he suffered in childhood, poverty, abuse, and in many instances the victim of violence. This is core mitigating evidence that many judges, considering analogous motions, for example, under the First Step Act for Compassionate Release, or conducting Davis resentencings, have looked to in deciding to reduce terms of imprisonment, even those imposed for serious crimes. More to the point, this is the kind of analysis that a district judge would conduct in the first instance under Section 3553. Again, if Judge Preska disagrees, if in her view the offense is simply too serious to merit resentencing, that's something that Judge Preska can say very simply. But as we understand here today, it's the government's burden to show that there's no possible risk of prejudice to Mr. Mouillette from application of the doctrine. And in Gomez, this Court... Is that the standard? I mean, where does that come from? I think that that comes from Vargas itself, Your Honor. It says it's the... in Vargas, this Court says it's the government's burden to just... to invoke and justify application of the concurrent sentence doctrine. And in a number of cases... I'm a little bit confused as to what that requires then. Is it, you know, if it's strictly... if it's only strictly administerial, or if there's a reasonable probability of some practical effect, or what is the standard and where does it come from? So I think putting that framework standard from Vargas together with this Court's decisions in Pena and Gomez, those cases, the latter two, strongly indicate, if not Gomez may outright hold, that the possibility of de novo re-sentencing with respect to life sentences that were not mandated by statute, but were imposed under the mandatory guidelines, precludes application of the concurrent sentence doctrine. What about Casir? That didn't involve mandatory life sentences, right? That's true, Your Honor. Casir involved non-mandatory life sentences. But the specific holdings... the specific holding of Gomez, in which this Court, before addressing the merits of the Davis claims, specifically said, we're going to address the concurrent sentence doctrine, as that was one of the certified questions. This Court said, because the pot... because vacatur of the 924c count would open up these mandatory... these mandatory guidelines, life sentences, and other counts, we cannot conclude... we cannot... we cannot justify application of the doctrine here. Cited to Pena, which suggested that in circumstances where it's anything but ministerial, a district court would be advised to exercise its discretion to re-sentence. And also the Sixth Circuit's decision in Augustine, which made the point explicit with respect to sentences imposed under the mandatory guidelines. Again, we're not saying Judge Preska has to reduce the sentence. What we're saying is that in a situation where, as here, Judge Leisure had no occasion to exercise his discretion in imposing sentences. To have a different... to make a difference, Judge Preska would have to reduce the life sentences on all... is it seven of the concurrent life sentences, right? Yes. I think it's... I think it's... I think it's more than seven. Eleven? I don't remember. But you have to run the table on the re-sentencing. I think what she... what she would have to do would be, she could impose an aggregate sentence to something less than life. It could be 30 years, it could be 40 years, it could be 50 years. But she would have discretion, provided that a sufficient number of 924C counts were vacated, to impose an overall sentencing package that would afford Mr. Muyad, after 30 years in federal prison, some meaningful prospect at breathing free air at some time in his life. We're not saying that Judge Preska has to do that. What we're asking for is the exercise of the district court's discretion. Or, in fact, to be more precise, what I'm asking for at this podium is for us to be sure that the district court has actually thought about this question, and addressed this question, in a way that reflects consideration of the substantial mitigating evidence that Mr. Muyad tendered. Thank you, counsel. We have reserved a few minutes for... to hear from the government. May it please the court. My name is Varun Damase. I'm an assistant United States attorney in the Southern District of New York, and I represent the United States in this appeal. I think I'll start with where the court left off with my counterpart, which is the concurrent sentence doctrine. At its essence, the entire argument of the appellant is that Judge Preska did not consider  I think that's belied by the record for a number of different reasons. First, as an initial matter, we presume that judges know the bounds of their discretion. That is especially true in the sentencing context, as this court has said time and time again, absent a clear indication to the contrary. With respect to this case in particular, procedural history, I think, is incredibly important here. This is not Mr. Muyad's first 2255 petition. In fact, he filed the same petition for the same reasons on a pro se basis that Judge Preska denied initially. Judge Preska denied that initially for the primary reason that he would be subject to 14 mandatory life sentences. And so any success that he would have had on the merits would have been inconsequential. Defense counsel below, in fact, wrote a letter to Judge Preska after that decision, stating that those life sentences were not, in fact, mandatory, and asked Judge Preska to vacate that decision. Judge Preska then subsequently vacated that decision. The only possible reason that Judge Preska would have had to vacate that decision was because she acknowledged that, in fact, the life sentences were not mandatory and there was a possibility of de novo resentencing. So in our view, that in and of itself is clear evidence of the fact that Judge Preska was well aware of the possibility of de novo resentencing by the fact that she vacated her initial decision in a reopened briefing. Just so I understand, the procedural history indicates that because she vacated the original denial, the only reason she would have done that is based on the realization or the party's briefing that the life sentences were not mandatory. That's correct, Judge Park. Defense counsel below, in his letter, specifically stated that Judge Preska's opinion could not stand because the life sentences were, in fact, not mandatory, and that Mr. Mouillet was, as he argued, entitled to de novo resentencing. But she says nothing about that during her subsequent denial. There is no explicit reference to it, Your Honor, but I think if we look at the opinion itself, it is clear that she considered it. I think it's in the, there's a footnote. Yes. Where she discusses this. So there's a footnote in which she discusses the party's sentencing submissions. There's also a discussion of the procedural history itself with respect to Mr. Mouillet's. Right. She doesn't say, look, I reopened this because I then became aware, but she does go through the fact that she denied the petition and then once counsel brought it to her attention that he fell in this little two-year period where it wasn't mandatory that she then vacated her order, right? That's correct, Your Honor. So in addition to that fact, the fact that Judge Prescott, sorry, excuse me, there was significant briefing once briefing was reopened that addressed the possibility of de novo resentencing from both the defense and the government. In that case, the government conceded that de novo resentencing was a possibility, but the government's position was that it was not required and it was not appropriate for Judge Prescott to exercise that discretion here. And then if you turn to the actual opinion itself, again, Judge Prescott is clear that the life sentences were not mandatory and that Mr. Mouillet would not be subject to a reasonable possibility of receiving a shorter term than life upon resentencing. Do you think Pena made new law or summarized existing law? I think it's summarized existing law, Your Honor. I don't think there's anything new about Pena. In fact, the Pena stands for the proposition that de novo resentencing is not required. The case law that Pena cites for the idea that de novo resentencing is something that is within the discretion of the district judge is case law that has long been established by this court. I think dating back to 2010 in particular, which my counterpart does not necessarily engage with in his reply. In addition to that, Your Honor, the government below has cited extensively cases from other as well as cases within the Southern District of New York where this case was that demonstrate that it was well within the discretion of sentencing judges at the time to consider the possibility of de novo resentencing. I think at bottom, Your Honors, nothing in the record suggests any type of misunderstanding on the part of Judge Prescott. And I think the robotic incantations that my counterpart would have this court require of her are not necessary. And they are, in fact, antithetical to the concept of the doctrine itself, which is a doctrine of judicial efficiency and is one that ensures that courts can allocate their precious resources to issues that have an actual practical effect. As Your Honors pointed out previously, Casere did not require any of this in a very similar circumstance when there were non-mandatory life sentences. And the last point I will make with respect to the concurrent sentence doctrine, Your Honors, is that the appellant also appears to want to have Judge Prescott engage in a factor-by-factor analysis under the 3553A factors. That requirement would effectively collapse the sentencing decision with the decision of whether or not to engage in de novo resentencing in the first place. And that is not something that we require sentencing judges to do, even in the sentencing context, to tick through the 3553A factors. It is enough that Judge Prescott adequately stated in her opinion that she considered the party's submissions and ruled ultimately in line with the touchstone of this analysis, which is that there was no reasonable prospect that we yet would receive a term shorter than life, Your Honors. I would like to turn to my two other arguments as well, unless the court has any further questions with respect to the concurrent sentence doctrine. With respect to procedural default, I will address what I can imagine is this court's question on this issue, which is whether the court has the inherent power to affirm on this basis, given that it was not raised below. First, as this court has made clear, it may affirm a decision of the district court on any basis. And I think the posture of the parties and the nature of the decision below is particularly instructive here. The government below was the prevailing party. The defendant below was the losing party. The Supreme Court, in the Dandridge v. Williams case and the Shiro v. Farley case, has stated that a prevailing party may assert, in a reviewing court, any grounded support of its judgment, whether or not the ground was relied upon or even considered in the district court. So despite the fact that the government admits that it did not raise this issue in the district court, it is something that this court can adequately consider. This court should not, in the government's opinion, count it as procedural default. The need to enforce procedural default on collateral challenges is significant. And to not do so, I think, would abandon the principles behind procedural default, namely the issue of finality of the judgment. Here, where the defendant has been convicted nearly 30 years ago, that concern is all the more relevant. And particularly in true light of the limited scope of Section 2255 relief, which is reserved for prejudicial errors so grave that they result in an ultimate miscarriage of justice and the presence of procedural default in this case, the government believes belies that notion. Lastly, procedural default is clear from the record. Your Honors, this court would not require any sort of additional factual inquiry to make that determination. And lastly, Your Honors, even if this court were to reach the merits, it is clear that Mr. Muget would lose on his Section 924C challenges. This is not a complex case. Each of the Challenge 924C convictions rests on a valid predicate in light of Davis, namely murder or attempted murder. And those predicates are based on the same shootings that are charged in the murder conspiracy counts. Muget was convicted of all of those substantive murders and attempted murders, whether on an aiding and abetting theory or Pinkerton theory, this court has definitively said in Gomez is irrelevant. What does matter is that he was convicted of the substantive offenses and they are inextricably intertwined with the conspiracy counts. They have the same factual basis. It is simply inconceivable, Your Honor, nor has the appellant posited any factual scenario in which the Challenge 924C convictions rested solely on the murder conspiracy predicates and not the substantive predicates. Unless the court has any further questions, I see that my time is nearly elapsed. Thank you. Thank you, counsel. Judge Park, with respect to the burden of justifying application of the doctrine here, Vargas said, and this is at page 960 of the opinion, to prevent invocation of the concurrent sentence doctrine, which is now the exception rather than the rule, the defendant should not have to make an affirmative showing of collateral consequences rather to invoke the doctrine that government should have the burden of persuading the appellate court that the risk of collateral consequence is too slight to justify review. In Al-Awali, and this is at page 467 of the decision,  will suffer no adverse collateral consequences from the court's decision to leave his conviction and sentence unreviewed. In our view, three attributes of the district court's decision indicate that the government cannot carry that burden here. One is the district court's failure to address the possibility of de novo resentencing and conversely, her explicit identification of the factors that she was considering in invoking the concurrent sentence doctrine. This is not a question of acquiring robotic incantations from a district court. It is a common sense observation that if a factor is material to the judge's exercise of discretion, she will say so. And in particular, where she has identified- The government's argument is that the context, that it was on reconsideration sort of made it that clear. The whole point of doing that after the briefing was to explore the issue. And in our view, had the district court gone on to rule on that basis, had the district court intended to say, I have considered the party's arguments with respect to resentencing. I've heard why the government thinks this is an aggravated case and why the defendant thinks he has offered mitigation. And I conclude that regardless, I would not alter the sentence. That would be one thing. But here, and I'm at A185, the judge specifically identifies the factors she's applying. She says, I'm applying the Vargas factors and she lists them. And none of those factors includes the possibility of de novo resentencing. Also on 185, the district court uses language that is not consistent with the interpretation that the government has given to her opinion. She says at the top of the page that a movement may raise a constitutional attack. Even though he is, quote, not technically speaking, claiming the right to be released. Mr. Mia was very much claiming the right to be released, not only from the custody attributable to the 924C convictions, but from incarceration as such via de novo resentencing. If I may, I do want to touch briefly, if I can, Judge Clark, on Delegati, as to which I submitted a 28J letter earlier this week. The court can read the cert papers for itself. But in short, if the Supreme Court grants review in Delegati, which appears probable given the solicitor general's position, that decision, should the defendant prevail, would invalidate many of the 924C counts in this case. Because it would invalidate both New York intentional murder and attempted murder as 924C predicates. And so in the interest of judicial economy, I would just encourage this court to keep an eye on that petition. And if certiorari is granted, consider staying this appeal pending the disposition of Delegati. Okay, thank you. Thank you, Your Honor. Thank you both. We'll take the case under review.